IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM SOLOMON LEWIS, | : | Civil No. 3:15-cv-92 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN, U.S.P. CANAAN, | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, William Solomon Lewis, an inmate currently confined at the United States Penitentiary, Canaan, in Waymart, Pennsylvania ("USP-Canaan"). (Doc. 1). Named as the sole Respondent is the Warden of USP-Canaan. Lewis claims that his due process rights were violated in the context of a prison disciplinary hearing. The petition is ripe for disposition and, for the reasons that follow, will be denied.

I.  **Background**

On April 1, 2013, while incarcerated at the United States Penitentiary in Coleman, Florida, Lewis was charged in incident report number 2427489 with refusing to participate in a required physical test or examination unrelated to testing for drug abuse, in violation of Federal Bureau of Prisons ("BOP") Prohibited Acts Code Section 227. (Doc. 1-1, p. 2; Doc. 7-2, Ex. 1, Attach. C).

A disciplinary hearing was held and the disciplinary hearing officer ("DHO") ultimately

found that Lewis committed the act as charged and sanctioned him with a loss of 27 days of good conduct time, 30 days of disciplinary segregation, 90 days loss of commissary and telephone privileges, and 30 days impounding of personal property. (Doc. 1-1, p. 4; Doc. 7-2, Ex. 1, Attach. E).

On May 7, 2013, Lewis filed Administrative Remedy No. 733314-R1 with the Northeast Regional Office. (Doc. 7-2, p. 16, Administrative Remedy Generalized Retrieval). On May 29, 2013, Administrative Remedy No. 733314-R1 was denied. (*Id.*). On January 27, 2014, Lewis appealed the denial of Administrative Remedy No. 733314-R1 to the BOP Central Office, designated as Administrative Remedy No. 733314-A1. (*Id.*). On February 18, 2014, the BOP Central Office rejected the appeal because Lewis failed to attach a copy of the regional appeal. (*Id.*). The Central Office advised Lewis to resubmit his appeal in proper form within fifteen (15) days. (*Id.*). There is no record that Lewis filed any other administrative remedies concerning the claims raised in the present habeas petition.

The instant petition was filed on January 15, 2015. (Doc. 1). In the petition, Lewis argues that he never refused to participate in a required physical test or examination, and insufficient evidence supports the DHO's finding that he refused to submit to a mandatory tuberculosis skin test. (Doc. 1-1, pp. 1-5). For relief, Lewis requests that the Court restore his good time credits and expunge the incident report. (*Id.* at p. 7).

II. **Discussion**

2

### A. Exhaustion

Respondent argues that the petition should be denied based on Lewis' failure to comply with the BOP's administrative review process. (Doc. 7, pp. 6-8). Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. *See, e.g., Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury"); *Carling v. Peters*, No. 00-2958, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion not

required where delay would subject petitioner to "irreparable injury").

In general, the BOP's administrative review remedy program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for review of an issue which relates to any aspect of their confinement. (Doc. 7-2, Ex. 1, Declaration of Michael Figgsganter, BOP Attorney Advisor ("Figgsganter Decl.") ¶ 10, citing 28 C.F.R. § 542.10, et seq.). With respect to disciplinary hearing decision appeals, a BOP inmate can initiate the first step of the administrative review process by filing a direct written appeal to the BOP's Regional Director (thus bypassing the institutional level of review) within twenty days after receiving the Discipline Hearing Officer's ("DHO") written report. 28 C.F.R. § 542.14(d)(2). If dissatisfied with the Regional Director's response, a Central Office Appeal may then be filed with the BOP's Office of General Counsel within thirty days of the date the Regional Director signed the response. 28 C.F.R. § 542.15(a). This is the inmate's final available administrative appeal. (Id.).

In the instant matter, Lewis filed his initial administrative remedy to the Northeast Regional Office. (Doc. 7-2, p. 16). The appeal was denied. (Id.). More than seven (7) months later, Lewis filed an appeal with the Central Office. (Id.). The Central Office rejected Lewis' appeal on February 18, 2014 because he failed to attach a copy of the original appeal. (Id.). The Central Office instructed Lewis to resubmit his appeal in proper form with fifteen (15) days. (Id.). Lewis did not submit any further appeals after the BOP

4

Central Office rejected his appeal. Rather than comply with the directive of the Central Office, Lewis then filed the instant petition.

Respondent asserts that Lewis failed to exhaust the required BOP administrative process prior to filing this action. (Doc. 7, pp. 5-8; Doc. 7-2, Figgsganter Decl. ¶ 11). In support of the non-exhaustion argument, Respondent has submitted a declaration under penalty of perjury by BOP Attorney Advisor Michael Figgsganter who acknowledges that Lewis filed an appeal from the DHO's decision with the Regional Director which was denied on May 29, 2013. (Figgsganter Decl. ¶ 11). While Respondent also acknowledges that Lewis appealed that denial to the Office of General Counsel, he asserts that Lewis' appeal was untimely and he failed to provide the required documentation from his regional appeal. (*Id.*). The Administrative Remedy Program provides that, "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). Lewis did not appeal to the Central Office within thirty (30) days.

In response, Lewis asserts that he never received the response from the Regional Office, rendering the administrative remedy process unavailable. (Doc. 10, pp. 2-3). Respondent maintains that the BOP regulations clearly provide that, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may

5

consider the absence of a response to be a denial at that level." (Doc. 7, p. 7, citing 28 C.F.R. § 542.18). Respondent further asserts that even assuming that Lewis' Central Office appeal was timely, he failed to resubmit his appeal to the Central Office with proper documentation, as instructed. (Doc. 7, p. 7).

Under the circumstances in the present case, Respondent may have sufficiently demonstrated that Lewis failed to properly exhaust his administrative remedies prior to filing the instant action and, therefore, procedurally defaulted his claims. However, we decline to have this case turn on whether exhaustion was satisfied or excused, because it is clear based upon the reasoning set forth below, that Lewis is not entitled to relief with respect to any challenge he is attempting to assert regarding his institutional disciplinary proceeding.

**B.    Merits**

Respondent argues that the petition should be denied on the merits because Lewis was afforded all of his procedural rights, and "some evidence" supports the finding of the Disciplinary Hearing Officer regarding incident report number 2427489. (Doc. 7, pp. 8-12).

As stated, on April 1, 2013, Lewis was served with incident report number 2427489 charging him with a code 227 violation for refusing to participate in a required physical test or examination unrelated to testing for drug abuse. (Doc. 1-1, p. 2; Doc. 7-2, Ex. 1, Attach. C). The incident report describes the incident as follows:

> Inmate Lewis, William #73998-279 is due for his annual tuberculosis skin test. Inmate Lewis was instructed that this was a mandatory test. I/M Lewis stated

"I am not taking this test. I refuse, call the LT and tell him I refuse." The tuberculosis test was not completed as a result of this refusal.

(Doc. 7-2, Ex. 1, Attach. C, Incident Report).

On April 1, 2013, the investigating lieutenant gave Lewis advanced written notice of the charges against him. (*Id.* at ¶¶ 14-16).

During the investigation, Lewis was advised of his right to remain silent, and he indicated that he understood his rights. (*Id.* at ¶¶ 23-24). Lewis made no statement and did not request any witnesses. (*Id.* at ¶¶ 24-25). At the conclusion of the investigation, the lieutenant determined that Lewis was appropriately charged and referred the incident report to the Unit Discipline Committee ("UDC") for further disposition. (*Id.* at ¶¶ 26-27).

On April 2, 2013, Lewis appeared before the UDC. (*Id.* at ¶¶ 17-21). Lewis stated "I told Stanley that I have an allergic reaction to the PTB test and that it creates red swollen spots. Then I stated that Program Statement provides the option for a chest x-ray in such circumstances as an alternative." (*Id.* at ¶ 17). After th hearing, the UDC referred the charge to the DHO, with a recommendation that sanctions be imposed. (*Id.* at ¶¶ 18, 20).

On April 2, 2013, a staff member provided Lewis with a copy of the "Inmate Rights at Discipline Hearing" form and "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 7-2, pp. 29-30). Lewis signed for his copies of the forms. Lewis requested to have a staff member represent him, requested to call a fellow inmate as a witness, and to call Lieutenant Phelps as a witness. (*Id.*). Lewis later waived his right to

7

call the inmate witness. (*Id.*).

A "Duties of Staff Representative" memorandum was prepared by the Warden of USP-Coleman for Nurse Flagg, describing her responsibilities as a staff representative for Lewis. (Doc. 7-2, p. 31, Duties of Staff Representative Memorandum).

On April 12, 2013, Lewis appeared for a hearing before DHO W. White. (Doc. 7-2, Ex. 1, Attach. E, DHO Report). During the April 12, 2013 DHO hearing, the DHO confirmed that Lewis received advanced written notice of the charges on April 1, 2013, that he had been advised of his rights before the DHO on April 2, 2013, and that Lewis requested a staff representative. (*Id.*). The DHO again advised Lewis of his rights, Lewis indicated that he understood them, and that he was ready to proceed with the hearing. (*Id.*). Lewis made the following statement regarding the charges:

> Inmate Lewis denied the charge to the DHO and stated, "I told him I wanted a chest x-ray because I had an allergic reaction to my last PPD. I had an allergic reaction to my last 3 PPDs. They did it last time by coercion by keeping me locked up until I submitted to a PPD test."

(*Id.*).

The DHO considered all the evidence, and explained his decision as follows:

The DHO bases this decision on the facts presented in the body of the written report. On April 1, 2013, at approximately 8:00 A.M., EMT-P S. Stanley instructed inmate Lewis, William #73998-279 that he was due for his annual tuberculosis skin test and that this test was mandatory. Inmate Lewis stated, "I am not taking this test. I refuse. Call the Lt and tell him I refuse." The tuberculosis test was not completed as a result of this refusal.

You denied the charge to the DHO and stated, "I told him I wanted a chest x-ray because I had an allergic reaction to my last PPD. I had an allergic reaction to my last 3 PPDs. They did it last time by coercion by keeping me locked up until I submitted to a PPD test."

You requested Lt. Phelps as a witness. He appeared during your hearing and stated, "He refused a PPD to Stanley. I checked with Stanley to see if he was allergic and he said, 'No, but they have given him a [chest] x-ray in the past, while he was on the compound.'"

The DHO requested another witness to appear during your hearing. The DHO called T. Objio, IDC, as a witness and she stated, "Policy has changed. Inmates cannot request a chest x-ray instead of taking a PPD test unless there is documentation of an allergic reaction. You got a PPD a year ago and there is no comment about an allergic reaction. Furthermore, there is documentation in you[r] record that you stated you don't have any allergies to the shot, but that in the past you were able to get a chest x-ray. There must be documentation that you had an allergic reaction to avoid getting a shot. The only exception is if you are brand new to the Bureau and there is no previous documentation to consult. You had your PPD on 03-30-2012 and it was read on 04-02-2012. You had a follow up on 04-11-2012 with the nurse practitioner and there was no documentation of you complaining of any allergic reaction to the PPD.["]

You requested H. Flagg, RN, as your staff representative. She was present throughout your hearing and stated, "He's very adamant about this, but there's no documentation in his record that he's had any allergies to this shot."

The DHO considered your denial statement; however, the DHO gives greater weight to the staff member's account of the incident. The DHO finds the staff member's statement and observations are more credible and believable than that of yours, as the staff member's observation was made strictly in the performance of his duties and has no reason to make false accusations. Mr. Stanley was clear in his written report that you refused to participate in the tuberculosis test by stating, "I am not taking the test. I refuse. Call the lieutenant and tell him I refuse." You stated to the DHO that you did not refuse a tuberculosis test, but that you requested a chest x-ray instead due to

9

having an allergic reaction to the PPDs in the past; however, according to your staff representative and witness statements, there is no documentation of this claim. According to a witness statement, in order for an inmate to request an x-ray instead of having a PPD conducted, there must be previous documentation in your medical file. Furthermore, the DHO has a copy of a previous incident report that was written at USP McCreary by Nurse Barnett. In this incident report, it was stated that on 03-23-2012 you told Nurse Barnett that you have not had a + PPD nor do you have server [sic] reactions, you just choose not to have the tuberculosis injected into your body. In conclusion, the DHO finds no evidence, nor did you provide evidence, to indicate the staff member conspired to falsely accuse you of this misconduct. The DHO determined that you had much to lose by accepting responsibility or being truthful in this matter, whereas the reporting officer is under a legal obligation to report truthful and accurate facts.

Based on the staff eyewitness account of the incident, previous incident report and the written report, the DHO finds that you committed the prohibited act of refusing to participate in a tuberculosis test, code 227, and sanctioned you accordingly.

(*Id.*).

The DHO reiterated that, in addition to the incident report and investigation, the documentary evidence which he considered in making his determination included a previous incident report and written statement wherein Lewis stated that he never had reactions to the test, he "just choose[s] not to have the tuberculosis injected into [his] body." (*Id.*). Lewis presented no documentary evidence in support of his claim.

After consideration of the evidence, the DHO found that the greater weight of the evidence supported a finding that Lewis committed the prohibited act of "refusing to participate in a tuberculosis test, code 227." (*Id.*). As such, the DHO sanctioned him with a

10

loss of 27 days of good conduct time, 30 days of disciplinary segregation, 90 days loss of commissary and telephone privileges, and 30 days impounding of personal property. (*Id.*). The DHO documented his reasons for the sanctions given as follows:

> The action/behavior on the part of any inmate to refuse to participate in a physical test or examination interferes with the orderly running of the institution. This behavior interferes with the staff member's ability to complete his/her assigned duties.
>
> The DHO disallowed good conduct time in accordance with your sentencing guidelines (PLRA). The DHO imposed the sanctions of disciplinary segregation, the loss of commissary and telephone privileges and impounded your personal property, as punishment for committing the prohibited act and to make you accountable for your actions.

(*Id.*).

Lewis was advised of his appeal rights at the conclusion of the hearing. (*Id.*).

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* As Lewis' sanctions did include the loss of good conduct time, he has identified a liberty interest in this matter.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process

rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers

informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. §§ 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. §§ 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the instant case, it is clear that Lewis was afforded all of the required procedural rights set forth in *Wolff*. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present

witnesses on his behalf. Lewis also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Lewis was then notified of his right to appeal.

Since Lewis was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. The DHO relied upon Lieutenant Phelps' testimony that Lewis refused the PPD test, and that he learned from Health Services staff that Lewis has not had an allergic reaction to the test. (Doc. 7-2, pp. 55-56, DHO Report). The Infectious Disease Coordinator testified that inmates cannot request a chest x-ray instead of taking a PPD test unless there is documentation of an allergic reaction, except in the case of new prisoners. (*Id.*). Lewis does not have a documented history of an allergy to the test. (*Id.*). Lewis' staff representative, Nurse Flagg, similarly testified that there is no documentation in his medical record that he ever had any allergies to the shot. (*Id.*). The DHO also relied upon a previous incident report in which Lewis was charged with refusing to submit to a PPD test at a different institution, and Lewis' admission that he never had a reaction to the test, he just chose not to have tuberculosis injected into his body. (*Id.*). Finally, the DHO relied upon the staff member's account of the incident. (*Id.*). Based on the foregoing, the Court

concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Lewis was found guilty of a 200-level, high category prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level offenses:

> A. Recommend parole date rescission or retardation.
> B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
> B.1 Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
> C. Disciplinary segregation (up to 6 months).
> D. Make monetary restitution.
> E. Monetary fine.
> F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
> G. Change housing (quarters).
> H. Remove from program and/or group activity.
> I. Loss of job.
> J. Impound inmate's personal property.
> K. Confiscate contraband.
> L. Restrict to quarters.
> M. Extra duty.

28 C.F.R. § 541.3 (Table 1). Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied as to incident report number 2427489.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate Order will issue.

Date: October 3, 2016

Robert D. Mariani
United States District Judge